Walter E. Heller and Company, Appellee, v. Johanna Martin, Appellant.

Gen. No. 42,462.

Opinion filed May 10, 1943. Rehearing denied May 24, 1943.

Laurence M. Fine, of Chicago, for appellant.

William H. Sloan and Theodore Sharf, both of Chicago, for appellee.

Mr. Presiding Justice Matchett delivered the opinion of the court.

On a former appeal in this case we reversed a judgment for plaintiff and remanded the cause for trial. (*Walter E. Heller & Co. v. Martin,* 307 Ill. App. 240, 29 N. E. (2d) 870.) Upon remandment and on trial by jury, at the close of all the evidence the court, after excluding practically all the evidence offered by defendant, on motion of plaintiff, directed a verdict for the full amount of plaintiff's claim with interest, amounting to $473.41. Again defendant appeals.

The suit is based on an instalment note dated May 13, 1937, for $391.30, payable in 17 installments to the order of Kol-Master Corporation, and by it indorsed May 17, 1937, before any instalment was due. Plaintiff claimed the note is negotiable and that it is a holder in due course, for value and without any notice of any defense. (Ill. Rev. Stat. 1941, ch. 98, § 52,

pp. 2182, 2183 [Jones Ill. Stats. Ann. 89.072]) Smith-Hurd's Ann. Stats., par. 72, p. 165.

The defense interposed was that the consideration for the "note" given was merchandise; namely, a device known as a stoker; that the execution and delivery of the instalment note was obtained by Kol-Master through false representations of the quality and worth of the stoker; that it was in fact worthless; further, that plaintiff was not a holder in due course but took the "note" with notice of defenses.

On trial, plaintiff introduced the "note" in evidence and rested. Plaintiff offered no evidence tending to show the circumstances under which it became the owner. Defendant then called plaintiff's manager as a witness. He said he represented plaintiff in the transaction in which the "note" was purchased from Kol-Master, and at the time he received the "note" for plaintiff he also received a conditional sales contract. He was asked if he detached the "note" from the contract. Plaintiff objected. The objection was sustained. Defendant offered the document in evidence, and the physical condition of the "note" and the contract indicates the "note" and contract were executed together on a form used by Kol-Master and that the "note" and the contract were detached from each other in plaintiff's hands. This is evident not only from the physical condition of the papers but also from the contents of the "note" and the contract, bearing the same number.

The conditional sales contract describes the merchandise sold by Kol-Master and its price; also shows a "finance charge" of $31.30, making up the exact amount for which the "note" was given. The body of the contract of Kol-Master and defendant consists of a full page of closely printed matter in small type. It provides that title and ownership is to remain in Kol-Master, etc. On the back of the contract is a printed assignment and conveyance of the property

therein described to plaintiff from Kol-Master. There is an appropriate blank for the insertion of the name of the assignee, the plaintiff, and by the instrument Kol-Master conveys the property to the assignee plaintiff under seal. Plaintiff therefore received not only the "note" but also an assignment to himself of the property which was the consideration for the "note."

Plaintiff's manager testified that at the time of the purchase of the "note" Kol-Master delivered to plaintiff an instrument called a "Schedule of Receivables." This schedule is in evidence as defendant's exhibit No. 4. It bears the same number as the "note" and the contract. On one side of it is written a description of the "note." On the back of it is a printed page designated "Assignment and Guaranty Agreement." This guaranty is a closely printed page in small type, addressed to plaintiff, signed by Kol-Master and dated May 14, 1937. It is under seal. It recites that any "receivable" not acceptable to plaintiff may be eliminated by it; guarantees payment; requires plaintiff to collect and Kol-Master agrees on demand to repurchase the "receivable" and to pay all expenses. It is also agreed the rights under the guaranty shall inure to the benefit of the assignees, successors, administrators, etc., and that these shall be bound.

Plaintiff's manager testified that in about four years past plaintiff and Kol-Master had about 550 similar transactions. Defendant's attorney asked the witness how the account between plaintiff and Kol-Master stood January 1, 1938; how it then stood; what was the total of the transactions for 1937 and 1938; whether plaintiff had any reserve cash in its hands in favor of Kol-Master at any time after the purchase of the note; if there was a surplus and what was done with it. Objections of plaintiff were sustained to these questions. Defendant then offered to prove by the witness that plaintiff and Kol-Master had an arrangement whereby "notes" attached to conditional sales contracts were taken by plaintiff upon condition

that in the event of nonpayment plaintiff would be reimbursed from funds available upon other receivables scheduled. Defendant then offered in evidence the guaranty of Kol-Master Corporation. Plaintiff objected and the objection was sustained, the court remarking that there was no foundation laid for its introduction. Defendant then offered in evidence the "Schedule of Receivables." Plaintiff objected that there was an indorsement on the back of the "note" showing that plaintiff purchased it, and that any arrangement between Kol-Master and plaintiff was immaterial to the issues. The court sustained the objection.

Defendant then called Mrs. Olesen, a sister of defendant, who was asked questions with reference to the purchase of the stoker from Kol-Master. She was asked to give her conversation with the sales manager of Kol-Master. She identified exhibits she had received from him. She identified exhibits which disclosed the representations upon which the purchase of the stoker was made. All were objected to by plaintiff and its objections were sustained.

Mr. Prexl, who had been in occupation stoker service for 10 years, was called as a witness. He stated that he had examined the stoker installed; that he has had experience with such stokers. He was asked as to its condition, but on plaintiff's objection was not permitted to answer. Defendant then offered to prove by these witnesses that the stoker was defective and useless, could not be used, could not be repaired, "that the defendant and Mrs. Olesen had various conversations with the various representatives of the Kol-Master Corporation; that the stoker is useless and cannot be repaired; that an attempt was made by the Kol-Master people to repair the same but that they could not; and that the men who came out there, sent by the Kol-Master Corporation, said that the stoker could not be repaired and that it was worthless; that the stoker caused damage to the building; that the de-

fendant detached the stoker and removed it to another place in the basement, and purchased another stoker.''

The plaintiff objected to the offer disclosing the theory upon which its case was tried. Plaintiff's attorney said: ''The plaintiff objects to all of that offer of proof on the ground that the same is immaterial, irrelevant, and incompetent, and no sufficient foundation has been laid therefor, particularly that the defendant must first lay the foundation by proving that at the time the plaintiff purchased the note sued on here, the plaintiff had notice or knowledge of those facts or part of those facts.'' The court said: ''Proof will be rejected. Is that all?'' Mr. Fine: ''That is all of my case.''

Section 59 of the Negotiable Instruments Act (which is section 79, Smith-Hurd's Ann. Stats., ch. 98, p. 189 [Jones Ill. Stats. Ann. 89.079]) provides:

''Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. . . .''

This case seems to have been tried by plaintiff on the theory that the presumption that a holder who as here has purchased before maturity holds in due course prevails throughout the case, and that until defendant by direct evidence disproved that presumption, it would not have a right to show the title of Kol-Master to the ''note'' was defective, or that in his hands it was subject to defenses at the time it was sold to plaintiff. We hold this an erroneous construction of the statute. As we understand it, while there is prima facie a presumption that a holder who takes before maturity holds in due course, that presumption may be overcome by evidence showing that at the time the instrument was purchased the maker of it had a good defense as against the original payee. We hold de-

fendant had a right to show, as she offered to do, that the ''note'' was obtained through false representations of the payee; that the consideration for which it was given had wholly failed and the article she purchased was entirely worthless. When and if this showing was made, the presumption plaintiff was a holder in due course disappeared and the burden was cast upon it to show that the purchase of the ''note'' was made under such circumstances as to make it a holder in due course under the statute. *Justice v. Stonecipher,* 267 Ill. 448; *Bell v. McDonald,* 308 Ill. 329; *Owens v. Nagel,* 334 Ill. 96; *Industrial Loan & Trust Co. v. Bell,* 300 Ill. App. 502, 21 N. E. (2d) 638. There is no such evidence. The written documents show that, as a matter of fact, plaintiff at the time it received the ''note'' took title to the merchandise which was the consideration for which it was given. The jury might infer, as a matter of fact, that as the owner plaintiff would know the worthlessness of the property, its kind and quality.

Passing over the question of whether this ''installment note'' was a negotiable instrument within the definition of the statute, we hold practically all the evidence excluded should have been admitted. This excluded evidence would have justified inferences that when plaintiff purchased the ''installment note,'' took the assignment, etc., the purchase was made with knowledge of the defenses as between the payee and the maker; in brief, that plaintiff is not a holder in due course within the meaning of the statute. As we have seen, this was the presumption under section 59, and plaintiff did not offer any evidence to rebut it. The whole transaction would appear to be well designed to defraud defendant in case the stoker proved to be worthless, as the offered evidence tended to show.

For the errors pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR and McSURELY, JJ., concur.