MICHAEL L. MITCHELL *et al.*, Plaintiffs-Appellants, v. JOHN SKUBIAK *et al.*, Defendants-Appellees (Home Inspection Consultants of Greater Chicago, Inc., Defendant).

First District (3rd Division)   No. 1—89—3514

Opinion filed June 30, 1993.

Brackett, Poulsom, Bretscher & Wirth, of Chicago (Robert C. Brackett and Ralph L. Brill, of counsel), for appellants.

Charysh & Schroeder and Michael W. Rathsack, both of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This cause arises out of the purchase of a residential home in Oak Park, Illinois, by plaintiffs, Michael and Renee Mitchell, from defendants, John and Luba Skubiak. Subsequent to purchase, plaintiffs discovered various defects and damage to the property which were not obvious or were concealed during plaintiffs' inspection of the property. The same defects were also not discovered by a third-party professional inspection firm, employed by plaintiffs to inspect the property prior to closing. Plaintiffs filed a complaint alleging fraudulent misrepresentation, concealment and nondisclosure by the defendant sellers as well as negligence by the inspection company. The trial court dismissed plaintiffs' complaint against the defendant sellers, finding as a matter of law that plaintiffs could not have reasonably relied upon the representations or actions of the sellers, since plaintiffs employed their own expert home inspector. Plaintiffs appeal from the dismissal of their complaint.

On May 9, 1987, plaintiffs and defendants signed a contract for the purchase of defendants' residence in Oak Park. An addendum to the contract allowed plaintiffs four days to retain an expert to inspect the residence for defects. Plaintiffs were given the option, based upon the inspector's report, to either rescind the contract or negotiate for a reduction in price. Plaintiffs then engaged defendant Home Inspection Consultants of Greater Chicago, Inc. (Home Inspection Consultants), to perform the inspection. Following examination of the premises, Home Inspection Consultants sent a written report to plaintiffs, listing various defects which were discovered, and on the basis of this report, the parties mutually agreed to adjust the purchase price.

Pursuant to the contract of sale, plaintiffs were permitted a final walk-through inspection of the property, prior to closing. This final inspection took place on May 20, 1987, although the closing did not occur until July 15, 1987.

During the walk-through inspection, plaintiffs discovered new cracks in the walls and ceiling of the master bedroom. Defendants represented to plaintiffs that these were due to the differences in humidity between the attic and the bedroom and further stated that the cracks were not due to any other cause. While inspecting the garage, defendants stated that "from time to time a little rain water collected on the roof of the garage and would require sweeping the water off." While inspecting the porch, plaintiffs did not notice any structural defects to the door or area leading under the porch, although they sub-

sequently discovered that a damaged doorway area had been covered with carpeting.

Count I of plaintiffs' complaint alleges that defendants knew that the roof of the main residence contained serious structural defects affecting value; that defendants affirmatively misrepresented the roof's condition and the reason for the cracks in the master bedroom; that such statements were made with the intention of inducing plaintiffs' reliance thereon; and that plaintiffs justifiably relied upon the representations of defendants, resulting in substantial damage to plaintiffs.

Count II of the complaint alleges essentially the same elements of misrepresentation found in count I, except the facts concerned the representation that the garage roof had to be swept from time to time after a rainfall. According to the complaint, this statement was a "half-truth," creating an impression that the garage roof was not defective and misrepresenting the roof's true condition.

Count III alleges that defendant knew of serious structural defects in the front porch and the doorway leading to the area beneath the front porch; that as a result of these defects, water was allowed to accumulate in the basement after each rain; that prior to any inspection by either plaintiffs or Home Inspection Consultants, the Skubiaks concealed the alleged defects by permanently gluing carpeting in place and placing furniture and other objects in front of the damaged doorway; that these acts of concealment amounted to affirmative misrepresentations that the porch was in good condition; and that the acts were done with the intent of inducing reliance by plaintiffs and Home Inspection Consultants on the outward appearance of the porch and to discourage further investigation.

Count IV of the complaint alleges that defendants knew of the various defects described in the other counts; knew that such defects were not easily discoverable upon inspection; knew that plaintiffs and their inspector would be misled by the nondisclosure of such defects; knew that these defects would be material to plaintiffs' decision in purchasing their home; and that defendants possessed an affirmative duty as vendors of real estate to disclose the existence of these defects to the plaintiffs as purchasers. Furthermore, plaintiffs allege that they reasonably relied on the silence of defendants in purchasing their home and as a result of this reliance they incurred damages.

After hearing arguments on defendants' motion to dismiss, the trial court concluded the following:

> "Gentlemen, I conclude here there was not reasonable reliance. There may have been reliance, but it was not reasonable when you had an inspector, your clients had an inspector to go

out and inspect the property. You have an action against the inspector. That is why I asked you if you were charging collusion between the owners and the inspector.

\* \* \*

That failing, you have an independent inspector to go out, then there was no—it was not reasonable for your clients to rely on the sellers. And in fact they didn't rely on them because they got their own inspector to go out.

\* \* \*

I will grant the motion."

The trial court dismissed plaintiffs' complaint, finding as a matter of law: (1) plaintiffs did not actually rely upon the acts or omissions of defendants because they hired a third-party inspection company, upon whose opinion they relied; and (2) even if plaintiffs could show actual reliance on the sellers' representations, such reliance was unreasonable because they hired a professional inspector.

On appeal, plaintiffs contend: (1) by actively concealing defects from the buyers as well as the home inspector, defendants can be held liable for fraud; (2) examination by an independent home inspector does not, as a matter of law, preclude buyers from relying upon the representations of sellers; and (3) plaintiffs' action against the home inspector does not defeat a claim against the vendors of the property, even if the pleadings are inconsistent.

■ On appeal, the appropriate standard for considering a motion to dismiss is *de novo*. That is, this court must examine the complaint . and consider, in light of all factual and legal circumstances, whether or not there exists any set of facts, if proven, which would support a cause of action under the laws of Illinois. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.) All sufficiently pled facts must be accepted as true, and any reasonable inferences to be drawn must be construed in a light most favorable to the plaintiff. (*Towne v. Cole* (1985), 133 Ill. App. 3d 380, 478 N.E.2d 895.) A complaint should only be dismissed where there appears absolutely no set of facts which would permit recovery. *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 443 N.E.2d 626.

We initially consider whether plaintiffs' complaint sufficiently states a cause of action for fraudulent misrepresentation and fraudulent nondisclosure in the purchase and sale of a residential home.

■ The requisite elements of a common law fraud cause of action are: (1) a false statement of material fact, intentionally made; (2) the party to whom the statement was made had a right to rely on it; (3) the statement was made for the purpose of inducing reliance thereon;

and (4) the reliance by the person to whom the statement was made led to his injury. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) While silence in a business transaction does not generally amount to fraud, mere silence is quite different from concealment. Silence accompanied by deceptive conduct or suppression of material facts results in *active concealment* and it then becomes the duty of a person to speak. Under such circumstances, if a party to a contract of sale fails to disclose the whole truth, having the requisite intent to deceive, this amounts to fraud, equivalent to an affirmative falsehood. *Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 277 N.E.2d 769.

■ While, traditionally, sellers of real estate were not liable for undisclosed defects under the doctrine of *caveat emptor*, the modern trend among courts is to impose a duty upon the sellers for failure to disclose defects which could not be discovered upon a reasonable and diligent inspection. (See *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154; *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409; *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.) However, a seller's silence in not disclosing defects, standing alone, does not give rise to a cause of action for misrepresentation. Silence must be combined with active concealment. (*Dee v. Peters* (1992), 227 Ill. App. 3d 1030, 591 N.E.2d 115.) Moreover, liability will not be imposed where the buyer was aware of the defects prior to purchase or could have discovered them through diligent inspection. *Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 557 N.E.2d 383.

Turning to the facts in this case, during their final walk-through inspection, plaintiffs observed cracks in the master bedroom. Count I of the complaint alleges that defendants "explained away new cracks within the ceiling plaster of one bedroom as a condition due to the natural variances in the temperature and humidity between the attic and the bedroom, thus concealing the defects and discouraging further investigation by the plaintiffs." The complaint further alleges that defendants knew of structural defects in the roof of the main residence, including "cracked, broken and insufficiently repaired rafters resulting in a condition of chronic leakage of rain water into two upstairs bedrooms within the residence." Plaintiffs further allege that defendants knew of the defects and the faulty repair work and knew that they were not apparent or readily discoverable upon inspection.

Count II alleges essentially the same cause of action for misrepresentation, except the allegations concern defects in the roof of the garage. During the walk-through inspection, defendant, John Skubiak,

stated that from time to time, rain water would collect on the roof and would require sweeping.

■ Considering the facts and surrounding circumstances contained in count I, we find that plaintiffs have presented facts which, if proven, could sufficiently support a finding of fraud. It is alleged that faulty repair work on the roof caused large amounts of water to leak into two of the upstairs bedrooms. It is further alleged that defendants knew of this faulty repair work and not only did they fail to disclose it, but they actively misled plaintiffs, by explaining a crack in the upstairs bedroom to be caused by temperature and humidity variances. There were no apparent water marks or wet areas which would have indicated a defective roof as the source of the cracks. Upon plaintiffs' inquiring about the source of the crack, a duty to speak arose on behalf of the defendants. Their failure to speak, or rather to disclose the entire truth of the matter, sufficiently states a cause of action for fraudulent misrepresentation.

Whether or not defendants' actions were intentional and whether or not plaintiffs' reliance was reasonable are questions of fact to be properly decided by the trier of fact. In determining whether reliance was reasonable, all of the facts available to the buyer, as well as those he could have discovered with ordinary prudence, must be taken into account. (*Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 453 N.E.2d 932.) We cannot find, as a matter of law, that plaintiffs' belief in and reliance upon the representation that the cracked ceiling was caused by temperature variances was unreasonable.

■ Count II, however, presents a different set of facts. Plaintiffs were informed that water collects on the roof of the garage and that it has to be swept off. Plaintiffs claim that defendants had a duty to inform them that this water, if not swept off, would cause damage to the inside walls of the garage. This presents an easier case of shifting the duty of inspection to the buyer. Defendants fully disclosed the water problem and the fact that "it had to be swept off." A little old-fashioned common sense on the part of the purchasers would have led them to the conclusion that if they did not sweep the water off the garage roof, it would probably drain into the garage, since obviously the water was collecting due to a faulty or nonexistent drainage system. Under these facts, we conclude that count II was properly dismissed for failing to state a cause of action.

■ Count III alleges that the front porch of the residence contained serious structural defects which were knowingly concealed by defendants, such that the plaintiffs and the home inspector would not

discover their true condition. Allegedly, defendants covered the porch and steps with indoor-outdoor carpeting, permanently affixed with glue, and further concealed a damaged door and doorway leading to the basement underneath the porch by placing furniture and other items in front of the door and doorway during inspections by plaintiffs and Home Inspection Consultants.

In the seminal case of *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133, the defendant sellers misrepresented to the buyers that there had never been a basement flooding problem in their home. They later admitted that they had concealed the flooding problem by removing damaged basement floor tiles and covering the area with a large rug. The owners also covered water-damaged walls in a bedroom with vinyl wall-covering. The court found that the sellers' silence accompanied by such acts of concealment were sufficient to support a finding of fraud. Citing *Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 277 N.E.2d 769.

Again, count III alleges actions by defendants, which, if proven, amount to an active concealment of defects. Plaintiffs must still prove, as in any action for fraud, *scienter* or intent to defraud by the defendants. Moreover, there must be sufficient evidence that defendants knew about the alleged defects and knew that plaintiffs would not discover them upon reasonable inspection. Plaintiffs must also prove that the undisclosed information was material to their decision in purchasing or negotiating the price of the home.

■ Count IV encompasses all of the factual allegations contained in the prior three counts, but states a cause of action for fraudulent nondisclosure as opposed to misrepresentation. As heretofore discussed, the allegations contained in counts I and III of the complaint sufficiently created a situation in which the defendant home owners owed plaintiffs a duty to disclose the true nature of the cracked ceiling in the bedroom and the porch door and doorway which had been concealed with carpeting. However, regarding the garage roof, plaintiffs have not stated a cause of action for concealment, as they were informed by defendants of the drainage problem and did not further investigate. A prospective home buyer may not shut his eyes to the obvious and then charge that he has been deceived, particularly where there was ample opportunity to further investigate and ascertain the true condition of the garage roof. (See, *e.g., Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 577 N.E.2d 383; *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 506 N.E.2d 1052; *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335.) Therefore, count IV sufficiently states a cause of action for nondisclosure as to

the roof of the main residence and the porch area. However, the factual allegations regarding the garage roof must be stricken.

■ We next consider whether the hiring of an independent professional home inspector precludes plaintiffs' cause of action as a matter of law. Defendants argue that any condition or defect which should have been discovered upon diligent inspection by Home Inspection Consultants was imputed to the buyers. It is further contended that a buyer cannot circumvent his or her duty to examine a house by employing a third-party professional home inspector.

We agree. While purchasers are free to seek expert advice as to the quality of a prospective home, they cannot subrogate their common law duty to inspect the premises to a third party and then later claim they had no knowledge of a defect which could have been discovered with reasonable diligence. In the same way, sellers are not relieved of their duty to disclose hidden or concealed defects simply because the buyer has interposed a third party to conduct the inspection. A duty to speak or disclose defects to a professional inspector arises under the same conditions as when a home is inspected by the buyer personally. We need not address whether or not this duty runs directly to the buyer or exists only as between the seller and the inspector company, since in this case, the alleged misrepresentation and concealment were practiced against the third-party inspector as well as the plaintiff buyers.

In an analogous case, the seller misrepresented the true nature of a basement flooding problem in the presence of both the buyer and the home inspector. Because the home inspector did not attempt to explain the basement's evidence of flooding but, instead, allowed the seller to explain water marks in the basement, the trial court upheld a cause of action in fraud as against the seller. *Connor v. Merrill Lynch Realty, Inc.* (1991), 220 Ill. App. 3d 522, 581 N.E.2d 196.

Turning to the instant case, plaintiffs' inspector knew about the drainage problem on the garage roof and informed them of this. As previously set forth, plaintiffs were also informed of the problem by the sellers personally. Therefore, plaintiffs would have no cause of action based upon the defective garage roof, even if they had not hired a professional inspector.

■ Home Inspection Consultants did inspect the rafters in the attic, but failed to note their condition in its written report. Plaintiffs allege in their complaint that the attic rafters had been repaired but that the repair work was faulty and that defendant sellers were aware of this since there had been water draining into the upstairs bedrooms. During plaintiffs' walk-through inspection, defendants ex-

plained away a crack in the master bedroom as due to temperature variances. The complaint further alleges that defendants stated or implied that there was no other cause for the crack. While plaintiffs may have a viable claim against defendant Home Inspection Consultants, this does not exonerate the sellers, who allegedly made a misrepresentation about the cracked ceiling directly to plaintiffs. Arguably, plaintiffs were relying upon the written report of the inspector as well as the statements of the sellers in concluding that the roof was not defective. Under this set of facts, there is sufficient evidence to support a cause of action against the defendant sellers, notwithstanding the employment of a third-party home inspector.

Likewise, the active concealment of the porch door and doorway may have prevented plaintiffs from discovering the damage beneath. While the defendant inspectors may have acted negligently in failing to discover the defective porch, the concealment was also practiced upon plaintiffs, who justifiably relied upon defendants' silence during the walk-through inspection. This is not a case where a rug could have been simply moved or picked up in order to inspect beneath. Rather, defendants permanently affixed the carpeting with glue, requiring it to be pryed from the area. Again, the employment of the home inspector in this instance did not serve to intervene in the alleged act of concealment as between the sellers and buyers in this case.

In this case, sufficient facts have been alleged to support the notion that the plaintiff buyers relied upon the representations of both the sellers and the home inspector. Whether plaintiffs' reliance upon either party was material to their purchase decision and to what extent reliance was placed upon the sellers versus the home inspector are issues to be resolved by the trier of fact. As the late Dean Prosser wrote:

> "Each of two or more liars may play a significant part in leading [the plaintiff] to his final conclusion; and the mere fact that he has made inquiries, or obtained additional information from other sources, does not necessarily mean that he had disregarded what the defendant told him. An independent investigation which fails to discover the truth, may not be enough to preclude reliance upon the defendant's statement. Thus inspection of property by a purchaser will not always prevent his reliance upon an assurance against latent defects. The question becomes one of fact, as to whether substantial weight was given to the [defendant's] representation, and it usually is for the jury." W. Prosser, Torts, §108 at 715 (4th ed. 1971).

Finally, we consider whether inconsistent allegations against each of two defendants preclude a cause of action against the Skubiaks in this case. It is well settled in Illinois that inconsistent pleadings are permitted against the same party in separate counts. (Ill. Rev. Stat. 1987, ch. 110, par. 2—613.) Clearly, in this case, the existence of inconsistent allegations against two different defendants in separate counts does not require the dismissal of the complaint.

In summation, we affirm the trial court's dismissal of count II of the complaint and reverse the dismissal of counts I, III and IV. However, the allegations in count IV regarding latent defects in the garage roof and drainage system must be stricken.

Affirmed in part; reversed in part and remanded with instructions.

CERDA and GREIMAN, JJ., concur.